**POWER CURBERS, INC., Plaintiff,**

**v.**

**E. D. ETNYRE & CO., and A. E. Finley & Associates, Inc., Defendants.**

**Civ. No. 1196.**

United States District Court
W. D. North Carolina,
Charlotte Division.

April 30, 1963.

Eaton, Bell, Hunt & Seltzer, Charlotte, N. C., for plaintiff.

Parrott & Richards, Charlotte, N. C., Wolfe, Hubbard, Voit & Osann, Chicago, Ill., for defendants.

WARLICK, District Judge.

This case originally came on for hearing before the Court, and following a full hearing an opinion was handed down on October 14, 1960, D.C., 187 F.Supp. 819, in which it was adjudged that plaintiff's patent # 2707422 was valid; that the defendants had infringed plaintiff's

patent and that the defendants' curb laying machine which was brought into court, offered in evidence and demonstrated clearly showed such infringement. It was further adjudged that plaintiff recover damages of the defendant E. D. Etnyre and Company for all amounts which it has received arising from the infringement of said patent, all as would be determined by a properly held accounting; and that the defendants and those acting for them be enjoined from further infringement of plaintiff's patent and that a permanent injunction issue.

On an appeal being taken, the Court of Appeals in an opinion decided January 3, 1962, 4 Cir., 298 F.2d 484, and written by Judge Boreman, said, among other things, "We reach the conclusion that the patent in suit is valid and represents invention by bringing together, in combination, the elements necessary to accomplish a real innovation in the industry;" concluding that the issue of validity must be decided in favor of plaintiff. It further held "On the issue of infringement in view of the proceedings in the Patent Office, we think the District Court erred in failing and refusing to apply the doctrine of file wrapper estoppel and in awarding plaintiff its attorney fees", and remanded the case with the direction "that the District Court make further findings on the infringement issue consistent with the views herein expressed". This mandate being dated March 23, 1962.

Plaintiff thereupon filed a petition in the Court of Appeals, seeking a re-hearing of the case and such re-hearing was denied without comment.

Subsequently on such hearing two additional machines which were *not in court* and offered in evidence when the case was originally heard were brought to Charlotte and were operated for the benefit of the Court on a paved public roadway. These two Etnyre machines are classed as Types Two and Three.

Following this demonstration further evidence was heard in the court room.

That evidence tended to show that the defendant Etnyre had made and sold three types of curb laying machines, each being almost wholly like the patent in suit, all of which have a pair of vertically adjustable front wheels and a single rear wheel.

The first type has a rear wheel positioned alongside the mold for vertical adjustment by an adjusting screw. This is clearly shown in plaintiff's Exhibits 35, 36(a–b) 48 and 49. This machine was the one that was present in the court room at the original hearing and which was viewed not only objectively but carefully by the Court and studied with equal care. This machine clearly infringed the plaintiff's patent and the Court of Appeals so declared that said Etnyre machine Type No. 1, infringed at least claims three and four of plaintiff's patent.

The second type has a double-tired rear wheel which when lowered into transport position is to support the machine and is positioned behind the mold opening. This type is best shown by Defendant's Exhibits 18 and 19.

The third type has a rear wheel which is raised and lowered by a two-position lever which locks the wheel in transport position approximately two inches below the bottom of the mold when the lever is in one position, and lifts the wheel above the bottom of the mold when the lever is in its second position. This is best shown by Plaintiff's exhibit 54–e.

The second and third types of the defendant Etnyre's machines were those displayed and operated in the presence of the Court by parties familiar with their operation. Defendant's Exhibit 18 clearly shows its second type machine and its operation. Defendant's Exhibit 20 properly shows the appearance and operation of its third type machine.

Following the original hearing plaintiff was able to purchase a second hand machine of the third type of defendant's manufacture and at the time of its purchase by plaintiff the owner had been operating it by using a rock positioned

behind the lever and with the lever additionally held in place by a heavy manila rope which had the force and effect as the plaintiff contends, of causing the wheel on the rear of the machine to be at least partially in contact with the surface,—thereby showing that this type of operation was one which brought about the best results, and as such was demonstrated to the Court. However, this machine as manufactured by the defendants in no wise makes provision for this type of operation as there are no fixed sockets or notches which would permit the lever to be so held in this position according to the manufacturer's plan of the machine. Plaintiff's Exhibits 61 and 62 show this machine as purchased by it.

It is clearly evident that defendant's second type machine,—that is the machine with the two-tired wheel, cannot be operated with any part of the tread of the wheel being in contact with the surface over which the curb is being laid, unless the mold forming the curb was made narrower, since defendant's Exhibit 19 plainly shows that when the two-tired wheel is in contact with the surface it destroys the curb. And that, if operable at all, such operation must be under conditions as shown in defendant's Exhibit 18, which was made at a demonstration had in Charlotte, when the two-tired wheel is adjusted so as not to be in contact with the surface, thus permitting the mold to be resting on the surface of the roadway. The molds on types 2 and 3 of the Etnyre machine are made of steel and show little, if any, wear, after five years' operation, the evidence discloses.

Defendant Etnyre had stopped manufacturing the second type machine at the time of the original hearing in the District Court, but it now appears it has resumed production of this machine.

Considering Defendant's Exhibit No. 21, which refers to the third type of machine, it unquestionably is made to appear that when this machine is operated with its single rear wheel in full contact with the surface of the roadway on which the curb is being laid, as when the lever

has been placed into transport position, that such makes a very imperfect curb for that the mold is raised some several inches above the curb and thus permits the materials to be extruded from either side of the mold, and clearly indicating that unless the mold is skidding or that through some means the rear wheel is elevated so that it merely comes in partial contact with the surface, a commercially satisfactory curb cannot be laid.

The Court of Appeals in a full opinion, when dealing with the Defendant's machines Types 2 and 3, neither of which was present and offered in evidence at the original hearing, but about which some evidence was heard, and considering particularly the question of the plea of the file wrapper estoppel, found among other things that the original Canfield application contained 18 claims and that only six, including Claims 1, 3 and 4 were ultimately allowed. It found among other things that "Each of the six claims provides for the operation, on wheels, of the framework supporting the curb-laying machine. The two original applications claims which made provision for the operation of the machine on skids or slides were cancelled when rejected. It is clear that the applicant accepted the examiner's view that the *skid-supported rear end* of the machine would not work and that efforts to claim a skid-supported curber were abandoned."

It must therefore appear that Canfield, in his original application, was seeking a patent for a machine operable on either wheels or skids, and that this idea of the operation on skids was obviously abandoned.

Further the Court said that "Infringement of Claim 1 is not found in any of the accused machines since they are not now and have not been equipped with a pair of vertically adjustable wheels near the rear of the framework", and in conclusion directed "If the design is such that the accused machine is operable *only* on skids and without the aid of the rear wheel, we perceive no infringement of any of the claims in suit, since one of the

essential elements of the patented combination is lacking."

The hearing therefore was directed toward a determination of whether or not the accused machines are operable only on skids and without the aid of the rear wheel. Taking into consideration the evidence heard, the exhibits offered, the objects seen, the actual curb laying, and all the factors presented to the Court, I find that none of the three types of the Etnyre machines has a pair of vertically adjustable rear wheels near the rear of the machine and therefore Claim No. 1 of the patent has not been infringed by the defendant.

That the first type of Etnyre's machine operable on an adjustable rear wheel infringes Claims 3 and 4 of Plaintiff's patent as was originally held by me and affirmed by the Court.

The second and third types of the Etnyre machines are not operable and will not produce a satisfactory and acceptable curb with the rear wheel in transport position, and thus are not infringements of Claims 3 and 4 of Plaintiff's patent No. 2,707,422; for that the evidence shows that the defendant's second and third type machines are made to operate only if and when the rear wheel of each machine, whether it be the double-tired or the single-tired wheel, is not in contact with the surface on which the curb is being laid, and that it is made to operate only on skids and without the aid of the rear wheel. That if both front and rear wheels are not down and in contact with the surface of the roadway, thus placing the machine entirely on skids, and a curb laying operation is sought, it is found that the machine jumps like a jack-rabbit and the operation is, to say the least, a sketchy sort of thing; and to contend that the machine, or any of them will operate on skids alone and without the aid of the front or rear wheels, is to make a mockery of truth. The front wheels are an absolute essential.

On the foregoing Supplemental Findings of Fact the following Conclusions of Law are made:

That Plaintiff's Patent No. 2,707,422 is good and valid in law and is patentable.

That the first type of the Etnyre machine, operating on an adjustable rear wheel, infringes Claims 3 and 4 of said patent.

That the second and third type of the Etnyre machines being so constructed as to operate only on skids and without the aid of the rear wheel, do not constitute an infringement of any of the claims in Plaintiff's patent, since it would thus appear that one of the essential elements of the patented combination is lacking.

In the Decree which counsel will present it will be Ordered and Adjudged that Plaintiff recover its damages of the Defendant E. D. Etnyre and Company, arising from its manufacture, use and sale of the first type of machine, all as will be determined by a properly held accounting. And that the defendants and those acting for them as agents, servants or employees be and they are enjoined from further infringement of Plaintiff's patent, by the manufacture, use or sale of the first type of the Etnyre curb making machine.

That such order likewise contain permanent injunctive relief.

That the Plaintiff recover of the Defendant its costs.

That Plaintiff recover nothing of the Defendants for the manufacture, use or sale of the Etnyre types machines Nos. 2 and 3.

These Findings and Conclusions supercede and replace those entered in the original judgment of October 14, 1960.